IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GARY WAYNE COKER and TERESINA COKER, | : : : |
| Plaintiffs, | : CIVIL ACTION NO. : 1:12-CV-4061-SCJ |
| v. | : : : |
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, and ENDURANCE AMERICAN SPECIALTY COMPANY, | : : : : : : |
| Defendants. | : |

## FINAL ORDER AND JUDGMENT
## INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS CAUSE is before the Court following a non-jury trial held in Atlanta Georgia, on May 5, 2015. At trial, the Court heard opening statements, sworn testimony presented by the respective parties, received evidence, and otherwise heard argument. Having weighed and considered all the evidence and testimony presented, the Court makes the following findings of fact and conclusions of law in support of its ruling.

# **FINDINGS OF FACT**[1]

On September 18, 2007, Plaintiff, Gary Wayne Coker, was injured in a vehicular accident with third-party motorist, Donald Eugene Woodall, in the State of Georgia. The vehicle driven by Mr. Coker at the time of the accident was owned by Ansco & Associates ("Ansco"), Mr. Coker's then employer, and was principally garaged and kept in Georgia.

At the time of the accident, Ansco was an insured under the following liability insurance policies:

> a. Liberty Mutual Insurance Company ("Liberty Mutual") Business Automobile Primary Policy No. AS2-631-004260-027 ("the Liberty Mutual policy"), effective July 31, 2007 through July 31, 2008 with limits of $5 million;
>
> b. Westchester Fire Insurance Company ("Westchester") Umbrella Policy No. G22049860002 ("the Westchester policy"), effective July 31, 2007 through July 31, 2008, with limits of $10 million;
>
> c. Great American Insurance Company ("Great American) Excess Liability Policy No. TUE 358014902 ("the Great American policy"), effective July 31, 2007 through July 31, 2008, with limits of $10 million;
>
> d. American Guarantee & Liability Insurance Company ("American

---

[1] Portions of these findings of fact and conclusions of law were derived from the parties' stipulation of undisputed facts filed on August 6, 2013 and in the record at Doc. No. [59] and from the parties' proposed findings of facts presented to the Court prior to the start of the bench trial.

2

Guarantee") Excess Liability Policy No. AEC 913878501 ("the American Guarantee policy"), effective July 31, 2007 through July 31, 2008, with limits of $25 million;[2] and

e. Endurance American Specialty Insurance ("Endurance") Excess Policy No. ELD10000214301 ("the Endurance policy"), effective July 31, 2007 through July 31, 2008, with limits of $25 million.[3]

Following the September 18, 2007 accident, Plaintiffs obtained a consent judgment against Mr. Woodall in the amount of $5.5 million, and provided him with a limited liability release in exchange for $25,000.00, which was the full limit of Mr. Woodall's policy. In March 2011, Plaintiffs made separate written demands against Liberty Mutual, Westchester, Great American, American Guarantee, and Endurance for payment of the $5.5 million consent judgment. On or about March 15, 2012, Plaintiffs entered into a settlement agreement with Liberty Mutual for less than the policy limits. On or about June 28, 2012, Plaintiffs entered into a settlement agreement with Westchester for less than the policy limits. Defendant Great American, Defendant American Guarantee, and Defendant Endurance did not tender payment in response to Plaintiffs' demands.

---

[2] The policy numbers found in the stipulation were later corrected at the summary judgment stage of the case. See also Doc. No. [120], p. 3, n.3 (regarding a correction to the policy limits of the American Guarantee policy.)

[3] The American Guarantee, Great American, and Endurance policies were admitted at the bench trial as Plaintiffs' Exhibits 13, 14, and 15 and are also found in the record at Doc. Nos. [5-4], [5-5], and [59-2].

Plaintiffs filed this lawsuit against Defendants on October 12, 2012 for breach of contract and bad faith penalties under O.C.G.A. § 33-7-11. After removal, Defendant American Guarantee and Defendant Great American answered the Plaintiffs' complaint. On November 27, 2012, Defendant Endurance filed a motion to dismiss against Plaintiffs' complaint, which was denied by this Court.

On October 23, 2013, approximately one (1) month after this Court denied Defendant Endurance's motion to dismiss, Plaintiffs made an omnibus second written demand against Defendant Great American pursuant to O.C.G.A. § 33-7-11(j), Defendant American Guarantee, and Defendant Endurance for payment of the $5.5 million judgment or a calculated portion thereof. Each insurer was provided with sixty (60) days upon which it could respond and tender payment. No Defendant tendered any payment in response to Plaintiffs' omnibus demand.

Each of the Defendants thereafter filed motions for summary judgment, which were denied. Plaintiffs also filed their own motion for partial summary judgment, which was granted as to the breach of contract claim. The Court found that as neither party moved for summary judgment on the bad faith claim of the Complaint, said claim remained for determination by a fact-finder.

## CONCLUSIONS OF LAW

O.C.G.A. § 33-7-11(j) is the applicable statute and provides in relevant part:

> If the insurer shall refuse to pay any insured any loss covered by this Code section within 60 days after a demand has been made by the insured and a finding has been made that such refusal was made in bad faith, the insurer shall be liable to the insured in addition to any recovery under this Code section for not more than 25 percent of the recovery and all reasonable attorney's fees for the prosecution of the case under this Code section. The question of bad faith, the amount of the penalty, if any, and the reasonable attorney's fees, if any, shall be determined in a separate action filed by the insured against the insurer after a judgment has been rendered against the uninsured motorist in the original tort action. The attorney's fees shall be fixed on the basis of competent expert evidence as to the reasonable value of the services, based on the time spent and legal and factual issues involved, in accordance with prevailing fees in the locality where the action is pending . . . .[4]

To support a cause of action under O.C.G.A. § 33-7-11, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith. Cf. Central Nat'l Ins. Co. of Omaha v. Dixon, 188 Ga. App. 680, 683(5), 373 S.E.2d 849 (1988) (internal citations and quotations omitted).[5] "Where there is a doubtful

---

[4] "As the statute imposes a penalty, it is strictly construed." Primerica Life Ins. Co. v. Humfleet, 217 Ga. App. 770, 772, 458 S.E.2d 908, 910 (1995).

[5] The Central case is based upon O.C.G.A. § 33-4-6 pertaining to bad faith liability of the insurer in the non-UM coverage context. As the language in § 33-4-6 and 33-7-11 is substantially similar, the Court applies the § 33-4-6 case law to the case sub judice. See e.g., McCall v. Allstate Ins. Co., 251 Ga. 869, 310 S.E.2d 513 (1984) (applying a conclusion under § 33-7-11 to § 33-4-6).

question of law, the insurer is not liable for bad faith penalties." Fed. Ins. Co. v. Nat'l Distrib. Co., Inc., 203 Ga. App. 763, 768, 417 S.E.2d 671, 676 (1992). In addition, "the mere fact of nonpayment is not evidence of bad faith, nor is any burden thereby cast on the insurer to prove good faith." Florida Int'l Indem. Co. v. Osgood, 233 Ga. App. 111, 115, 503 S.E.2d 371 (1998) (internal citations and quotations omitted). A defense which would bar a finding of bad faith is one "which raises a reasonable question of law . . . ." Giles v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 578 F. Supp. 376, 379 (M.D. Ga. 1984) (citing Georgia Int'l Life Ins. Co. v. Harden, 158 Ga. App. 450, 454, 280 S.E.2d 863, 866 (1981)).

The question presented by the parties' arguments at trial is essentially whether the circumstances of this case raise a reasonable or doubtful question of law so that there can be no finding of bad faith. The Court finds in the affirmative.

A review of the record shows that in the Court's August 27, 2014 Order[6] granting Plaintiffs' partial motion for summary judgment as to the breach of contract claims, this Court recognized that there was no controlling authority

---

[6] The Court recognizes that the evidence does not show that Plaintiffs sent demand letters after the entry of the summary judgment order (but prior to); nevertheless the summary judgment order frames the circumstances of the legal questions in this case.

(under Georgia law) that directly addressed whether, in the uninsured motorist (UM) context, there is an exhaustion requirement among uninsured, umbrella, or excess coverage carriers once the primary coverage limit has been reached Doc. No. [120], pp. 26-28. In the absence of authority on this point, this Court drew "guidance" from the case law "sufficient to render a conclusion that each Defendant insurer is responsible for Plaintiffs' full amount of damages." Doc. No. [120], pp. 26-28.

As to the waivers signed by Dycom in favor of Liberty Mutual and Westchester and their application to Defendants' follow form policies, the Court found that it was "undisputed that there is no language in Georgia's UM statute providing for a time for which a written rejection of UM coverage is to be obtained" and that "there is a gap in the statute to this regard." Id. at p. 31. This Court determined as a matter of first impression that each Defendant was required to obtain their own written rejections of UM coverage. Id. at pp. 32-33.[7]

---

[7] At the summary judgment stage of the case, Defendant American Guarantee also raised a notice argument, distinct from the other insurance defendants and not previously raised in any other pre-summary judgment motions.

The Court agrees with Defendants' argument that they cannot be penalized for raising their contractual defenses when some answers to the questions presented are not found in the 2007 Georgia UM statute or Georgia case law.

In addition, the fact that Plaintiffs won on the breach of contract claim at summary judgment is not determinative, as the standards for summary judgment and bad faith findings are not the same. The Court finds that there were reasonable questions of law involved in this case and that each defendant insurer was justified in litigating the issues. Accordingly, this Court holds as a matter of law that each defendant insurer is not liable for bad faith penalties under O.C.G.A. § 33-7-11(j). This Court concludes that the Plaintiffs have not proven their bad faith claims under O.C.G.A. § 33-7-11 against the Defendants by a preponderance of evidence.[8] See Georgia Cas. & Sur. Co. v. Seaboard Sur. Co., 210 F. Supp. 644, 657 (N.D. Ga. 1962) ("Some of the questions involved in this case are for the first time adjudicated in this state. From the complicated state of facts considered by the Court in this case, it cannot be said that such questions are easy of solution. Under these circumstances, this Court cannot say that a resort to the courts by the defendant to have these questions determined was unreasonable.

---

[8] In addition, Plaintiffs failed to present any evidence of their attorney's fees at the bench trial.

Certainly, the defendant should not be charged with penalties and attorneys' fees under the state of facts in this action.").

## JUDGMENT

Having held a bench trial, it is hereby ordered and adjudged that as to Count II of the Complaint, alleging bad faith failure to pay demand for uninsured motorist coverage, the Court finds in favor of the Defendants and against Plaintiffs. Judgment shall issue on the Plaintiffs' bad faith claim in favor of the Defendants.

**IT IS SO ORDERED**, this 24th day of August, 2015.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE